IN THE MATTER OF THE OPENING OF TWENTY-SIXTH STREET,
FROM THE SECOND AVENUE TO THE BLOOMINGDALE ROAD,
IN THE TWELFTH WARD OF THE CITY OF NEW-YORK.

The commissioners of estimate and assessment in the city of New-York, in
fixing the amount of *benefit* and *damage* to the owners of lands in the vicin-
ity of the *Bloomingdale road,* arising from the opening of streets, are au-
thorized to consider the Bloomingdale road *as closed,* and to make their es-
timates accordingly.
It is no objection to the confirmation of a report, that one of the commission-
ers is a member of the board of common council of the city, and that a por-
tion of the property assessed belongs to the corporation.

In the opinion delivered by the CHIEF JUSTICE will be found , August 21.
all the facts necessary to be known, to the due understanding
of the question decided.

*By the Court,* SAVAGE, Ch. J.   Three objections were urg-
ed against the confirmation of the report of the commissioners
of estimate and assessment in this matter: 1. That the as-
sessment is unequal and unjust; 2. That Samuel Purdy is
incompetent to act as a commissioner, being an assistant al-
derman; 3. That William Kent, another commissioner, did
not assent to the report.

The last objection is not supported by the facts of the case.
The second I think is not a serious objection.   Mr. Purdy
was appointed previous to his election as an assistant alder-
man; but even were it otherwise, and he had been appointed
while a member of the common council, that would be no
ground for refusing to confirm a report, otherwise unexcep-
tionable.   The objection is, that the commissioners are inter-
ested because the corporation property is assessed.   The cor-
poration property does not belong to the common council, nor
do they pay the assessment, otherwise than nominally; the
taxes of Mr. Purdy are neither enhanced nor diminished in
consequence of his being an assistant alderman.   His interest
in the corporation property was as great before as since his
election; and it is no other than the interest of every citizen
of New-York, who contributes as much as Mr. Purdy does to
the public burdens.

The principal ground of opposition arises from the merits
of the report itself.   It is contended that the estate of Mr. Bai-
ley is injured much more than the amount of damages assess-
ed in its favor.   There are six witnesses who testify that such
is the fact, and the reason which seems to have weight in
forming this opinion is, that no other streets are necessary for
the accomodation of this property than the Bloomingdale
road and the Fifth avenue.   This is assuming that the Fifth
avenue is to be opened, and that the Blomingdale road is to
remain open.   The latter is an assumption which cannot be
indulged, and therefore is not the legitimate basis of a correct
opinion.   The Bloomingdale road must be closed with the pro-
gress of improvement.   This matter has been long since set-
tled by the legislature.   By the " act relative to improvements,
touching the laying out of streets and roads in the city of New-
York and for other purposes," passed April 3d, 1807, commis-

sioners were appointed, with "power to lay out streets, roads and public squares, of such width, extent and direction as to them shall seem most conducive to the public good, and to shut up, or direct to be shut up, any streets or parts thereof which have been heretofore laid out and not occupied by the common council of the said city, within that part of the city of New-York to the northward of a line commencing at the wharf of George Clinton, on the Hudson river; thence running through Fitzroy road, Greenwich lane and Art street, to the Bowery road; thence down the Bowery road to North street; thence through North street, in its present direction, to the East river; and no square or plot of ground made by the intersection of any streets to be laid out by the said commissioners, shall, ever after the streets around the same shall be opened, be or remain divided by any public or open lane, alley, street or thoroughfare." The commissioners were further directed to lay out the streets of such ample width as to secure a free circulation of air after they shall be built upon. This statute speaks a language clear and unequivocal, that the streets and avenues to be laid out are to be the only streets and avenues, except those which had been occupied by the common council. Under this statute, the commissioners have laid out the city north of the specified boundary into streets and avenues, in such a manner that the Bloomingdale road must be closed, or cut diagonally the squares, streets and avenues in that part of the city. It cannot be wanted as a street, for there are enough without it; it will not be wanted to afford a free circulation of air, for that object is secured by the streets and avenues laid out by the commissioners. It was not shown that this road was one which had been occupied by the common council, and the contrary was averred. It must be considered therefore, as matter of course, that the Bloomingdale road must be closed when the streets and avenues are completed so as to supersede its necessity. The commissioners' streets and avenues must be made, and among others the Fifth avenue and Twenty-sixth street must be opened, and all other streets, lanes and alleys that interfere with the commissioners' map, must be closed. The only question for the commissioners of estimate and assessment was, how much

ALBANY,
Aug. 1834.

In the matter of Twenty-sixth street.

ALBANY,
Aug. 1834.

In the matter
of Twenty-
sixth street.

damage, if any, did the estate of Bailey sustain beyond the benefit, by the opening of Twenty-sixth street? In solving this question, they may assume that if the plot of ground which is now assessed, between the Bloomindale road and the Post road, extending to half the distance of the adjacent streets, had belonged to the same owner, the damage and benefit would be equal : that is, the owners of the adjacent lots on either side must be at the expense of making the street ; they must pay all necessary expenses. Each lot must pay for half the street in *front, make the* street and pay all incidental expenses. If one person owned the whole, he must give the land for the street and pay all expenses. If one owned the street and two others the lots on either side, the owners of the lots would pay for the street itself and all expenses. If, indeed, any improvement benefits other property, the assessments may be extended to it. The whole plot of ground already designated must therefore be at the expense of making Twenty-sixth street, from the two points mentioned. It so happens that this plot of ground has but three owners ; one part belongs to the estate of Bailey, another to the estate of Semlee, and the third to the corporation of the city of New-York. They own it in unequal quantities, and disproportionate quantities are taken from each for the street. The several damage and benefit to each is partly matter of calculation and partly matter of opinion. The front is more benefitted than the rear grounds ; and though by the map a large proportion seems to be taken from the Bailey estate, yet it also seems to have two fronts for the whole distance, though the rear does not belong it. Neither from an inspection of the map, or any other evidence before the court, is there any thing to justify us in refusing to confirm the report. The commissioners have given it their sanction, and three other persons have concurred in its justice. The affidavits in opposition, assume that the present roads are to remain open, and therefore Twenty-sixth street is unnecessary. I have already shown that such is not the correct manner of deciding the question now presented. We must assume that Twenty-sixth street is necessary and proper ; and upon that assumption there is no evidence against the justice of the report

Report confirmed.